USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/26/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JORGE LUIS CULCAY VELETANGA,

                        Petitioner,

   -against-

KRISTI NOEMI, in her Official Capacity as the
SECRETARY OF THE U.S. DEPARTMENT OF
HOMELAND SECURITY, et al.

                        Respondents.

No. 25-CV-9211 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

      Petitioner Jorge Luis Culcay Veletanga ("Petitioner") commenced this action by filing a petition for a writ of *habeas corpus* on November 4, 2025, alleging that United States Immigration and Customs Enforcement ("ICE") is unlawfully detaining him. (ECF No. 1.) Petitioner subsequently filed an emergency motion for a temporary restraining order and preliminary injunction seeking (1) to prevent his transfer outside the jurisdiction of the Southern District of New York while his *habeas* petition is pending and (2) his immediate release from ICE custody. (ECF No. 3.) As a result, the Court issued an order preventing Petitioner's transfer outside of the Southern District of New York while his *habeas* petition remains pending.[1] (ECF No. 4.) The Court also conducted a show-cause hearing on December 18, 2025.[2]

---

[1] Petitioner commenced this action during the government shutdown, which rendered Respondents unable to respond in light of the then-existing Standing Order (1:25-mc-00433-LTS) concerning the stay of certain civil cases and the tolling of related deadlines involving the United States Attorney's Office for the Southern District of New York. (*See* ECF No. 1.)

[2] The hearing for this action was originally scheduled for December 16, 2025. (ECF No. 16.) It was subsequently adjourned to December 18, 2025, due to the parties' inability to attend in person. (ECF No. 17.) Nevertheless, the Court conducted a teleconference on December 16, during which the parties informed the Court of their respective positions. At the hearing held on December 18, 2025, the Court instructed Respondents to submit an opposition and granted Petitioner the right to reply.

1

For the following reasons, the Court GRANTS in part and DENIES in part Petitioner's motion.

**BACKGROUND**

Petitioner has resided in the United States for over twenty years. (ECF No. 3, "Pet'r Mot.," at 3.) He is a citizen and national of Ecuador who arrived in the United States as a child in 2003. (*Id*.; Ex. A.) On November 5, 2012, Petitioner was granted Deferred Action for Childhood Arrivals. (*Id*.; Ex. E.)

Prior to the detention at issue, Petitioner has been arrested on several occasions. (ECF No. 19, "Resp'ts Opp.," at 5.) Petitioner has been convicted of a misdemeanor, has been pulled over on multiple occasions for driving under the influence, has been arrested for child endangerment, has fled from a police officer, and was charged with third-degree assault. (Pet'r Mot. Ex. C at 15.) On or about September 6, 2025, Petitioner was detained by ICE for allegedly failing to comply with a court order requiring him to register with the probation office. (*Id*.) Shortly thereafter, the Government initiated removal proceedings against Petitioner. (*Id*.; Ex. C.) In response, Petitioner applied for (1) cancellation of removal and adjustment of status for certain nonpermanent residents and (2) asylum. (*Id*. Exs. C–D.)

While detained, Petitioner filed a motion before the Executive Office for Immigration Review seeking a minimal bond to secure his release on October 9, 2025. (*Id*.) The motion was denied for lack of jurisdiction on October 17, 2025. (*Id*.; Ex. B.) Petitioner contends that the denial was erroneous because it relied on 8 U.S.C. § 1225(b)(2), which applies only to "arriving aliens." (*Id*.) He asserts that his detention falls instead under § 1226(a), which governs individuals already present in the United States and would have entitled him to a bond hearing. (*Id*.) Petitioner now seeks relief from this Court.

**LEGAL STANDARD**

I. **Temporary Restraining Order**

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Valenzuela Arias v. Decker*, 612 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) (quoting *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)). "A plaintiff seeking a [TRO or] preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "When the government is a party to the suit, [the court's] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021).

"The district court has wide discretion in determining whether to grant a [TRO or] preliminary injunction." *Valenzuela Arias*, 612 F. Supp. 3d at 311 (quoting *Almontaser v. N.Y.C. Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (per curiam)). That being said, "[a] preliminary injunction is an extraordinary remedy," *Winter*, 555 U.S. at 24, and "should not be routinely granted." *Hanson Tr. PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) (quoting *Med. Soc. of State of N.Y. v. Toia*, 560 F.2d 535, 537 (2d Cir. 1977)). And "[w]hen deciding whether to issue a preliminary injunction, courts 'should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *We The Patriots USA, Inc.*, 17 F.4th at 279 (quoting *Winter*, 555 U.S. at 24).

II. **Section 2241 Petition**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of *habeas corpus* whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"

*Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "When a petitioner brings a *habeas* petition [under section] 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the *habeas* proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "The equitable principles governing [section] 2241 are reflected in the plenary discretion vested in *habeas* courts to 'hear and determine the facts, and dispose of the matter as law and justice require.'" *Id.* (alterations omitted) (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990)).

## DISCUSSION

Petitioner now moves for a temporary restraining order and preliminary injunction seeking to enjoin Respondents from (1) transferring Petitioner outside the jurisdiction of the Southern District of New York while his *habeas* petition remains pending, and (2) releasing Petitioner from custody. (Pet'r Mot. at 1.) Petitioner argues that he is being unlawfully detained pursuant to § 1225(b)(2), which improperly denies him a bond hearing and violates the Due Process Clause of the Fifth Amendment. (*Id*. at 5.) Petitioner instead asserts that he should be detained pursuant to § 1226(a)—as he has been present in the U.S. for over twenty years prior to his detention—which would entitle him to a bond hearing. (*Id*.) In response, Respondents contend that detention under § 1225(b)(2) is proper and, in the alternative, argues that Petitioner's detention is mandatory pursuant to § 1226(c). (Resp'ts Opp. at 1.) The Court now addresses each claim in turn.

I. **Detention Under 8 U.S.C. § 1225(b)(2)**

    a. **Likelihood on the Merits**

It is well established that "[t]o implement its immigration policy, the [g]overnment must be able to decide (1) who may enter the country and (2) who may remain here after entering." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). For decades, these two inquiries have been recognized and treated as distinct. Indeed, "[t]he distinction between [a noncitizen] who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Until three months ago, the Department of Homeland Security ("DHS") recognized this dichotomy and operated under two separate statutory schemes governing the detention of noncitizens: (1) § 1225, covering noncitizens when they arrive at the border or when they enter illegally and are caught very close to the border, and (2) § 1226, covering noncitizens who successfully have entered the United States—whether legally or illegally. *See Alvarez Ortiz v. Freden*, 2025 WL 3085032, at *1 (W.D.N.Y. Nov. 4, 2025). The Supreme Court further solidified this understanding. *See Jennings*, 583 U.S. at 289 ("In sum, U.S. immigration law authorizes the [g]overnment to detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the [g]overnment to detain certain [noncitizens] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).").

DHS now appears to have departed from Supreme Court precedent and decades of established practice by taking the position that anyone physically present in the United States without having been legally "admitted"—regardless of the duration of their presence—falls under § 1225(b)(2), which mandates detention. *See Alvarez*, 2025 WL 3085032, at *1; *Romero v. Hyde*, ⸺ F. Supp. 3d ⸺, ⸺, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025) ("[R]espondents' new interpretation is contrary to the agency's own implementing regulations, its published guidance, the decisions of its immigration judges (until very recently), decades of practice, the

Supreme Court's gloss on the statutory scheme, and the overall logic of our immigration system." (internal citations omitted)). DHS takes this position in light of the Board of Immigration Appeals' recent determination treating noncitizens who have entered the United States and those who have never entered as indistinguishable for purposes of detention. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA Sept. 5, 2025).

Respondents' argument is not novel. Respondents defend the notion that Petitioner's motion for a bond hearing was properly denied for a lack of jurisdiction pursuant to § 1225(b)(2). (Resp'ts Opp. at 7–11.) Usually, when statutes are at issue, a court's starting point is analyzing the statutory text. *See United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016). This Court need not reinvent the wheel—numerous courts in the Second Circuit have already interpreted the differences between §§ 1225(b)(2) and 1226(a). A majority of these courts have determined that § 1225(b)(2) applies only to noncitizens who are actively "seeking admission" at or near the border, or who have been paroled into the United States.[3] *See, e.g.*, *Alvarez Ortiz*, 2025 WL 3085032, at *10 ("this Court finds that section 1225(b)(2) applies only to noncitizens actively 'seeking admission' at or near the border or who have been paroled."); *Hyppolite v. Noem, et al*, 2025 WL 2829511, at *12 (E.D.N.Y. Oct. 6, 2025) ("the Court now joins the broad consensus among Article III courts to date, and finds that § 1225(b)(2)(A) does not apply to a noncitizen like [petitioner], who has been living in the United States for years, and that his detention can only be authorized if the procedures followed comply with 8 U.S.C. § 1226(a)."); *J.U. v. Maldonado*, 2025 WL 2772765, at *9 (E.D.N.Y. Sept. 29, 2025) ("This Court finds that the historical practice— under which § 1225(b)(2)(A) would not have applied to Petitioner—is consistent with the text,

---

[3] Respondents further identify numerous cases from this District holding that § 1226(a) applies when a noncitizen is detained within the United States instead of at or near the border. (*See* Resp'ts Opp. at 8.)

structure, and statutory scheme."). The Second Circuit is not alone in reaching this conclusion.[4] Indeed, as recently as December 12, 2025, district courts have held that a noncitizen who has resided in the United States for at least two years may not be detained pursuant to § 1225(b)(2). *See Reyes Benitez v. Noem, et al.*, 2025 WL 3560575, at *2 (S.D. Cal. Dec. 12, 2025).

In the instant action, Petitioner is a citizen and national of Ecuador who arrived in the United States as a child in 2003—more than twenty years ago. (Pet'r Mot. at 3.) He has remained continuously present in the United States since that time. (*Id*. Ex. C at 14.) On November 5, 2012, Petitioner was granted Deferred Action for Childhood Arrivals. (*Id*. at 3.) In light of the growing consensus of district courts nationwide rejecting the Board of Immigration Appeals' reasoning in *Matter of Yajure-Hurtado*, this Court likewise concludes that Petitioner may not be detained pursuant to § 1225(b)(2). *See Alvarez Ortiz*, 2025 WL 3085032, at *10 ("This Court therefore denies the respondents' motion to dismiss, and it also finds that [petitioner] is likely to succeed on the merits of his claim that the authority for his detention stems from section 1226(a) and not section 1225(b)" because he has been present in the United States for over twenty years).

### b. Irreparable Harm

Having found that Petitioner is likely being unlawfully detained pursuant to § 1225(b)(2), the Court next considers whether he will suffer irreparable harm.

Freedom from imprisonment—government custody, detention, or other forms of physical restraint—lies at the heart of the liberty protected by the Due Process Clause. *See Cabral v.*

---

[4] An abundance of district courts around the country have disagreed with *Matter of Yajure Hurtado* and have granted *habeas* petitions or motions for injunctive relief for noncitizens whom DHS has improperly detained under § 1225(b)(2). *See, e.g.*, *Guerrero Orellana v. Moniz*, —— F. Supp. 3d ——, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Lepe v. Andrews*, —— F. Supp. 3d ——, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Barrera v. Tindall*, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Hasan v. Crawford*, —— F. Supp. 3d ——, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Jimenez v. FCI Berlin, Warden*, —— F. Supp. 3d ——, 2025 WL 2639390 (D.N.H. Sept. 8, 2025*); Mosqueda v. Noem*, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025).

*Decker*, 331 F. Supp. 3d 255, 263 (S.D.N.Y. 2018) (citing *Zadvydas*, 533 U.S. at 690).  Indeed, the Second Circuit has established that an "alleged constitutional violation constitutes irreparable harm." *Torres-Jurado v. Biden*, 2023 WL 7130898, at *5 (S.D.N.Y. Oct. 29, 2023) (quoting *Basank v. Decker*, 613 F. Supp. 3d 776, 788 (S.D.N.Y. 2020) (collecting cases)); *accord Statharos v. N.Y.C. Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999).  In cases not dissimilar to this one, courts have "easily" found irreparable harm where a petitioner is being wrongfully detained pursuant to § 1225(b)(2).  *See, e.g., Alvarez*, 2025 WL 3085032, at *11; *Guerrero Orellana v. Moniz*, 2025 WL 2809996, at *9 (D. Mass. Oct. 3, 2025); *Mosqueda v. Noem*, 2025 WL 2591530, at *6 (C.D. Cal. Sept. 8, 2025).

Petitioner contends that his due process rights have been violated by his prolonged mandatory detention without a bond hearing for more than three months.  (Pet'r Mot. at 5, 8.)  This Court agrees.  It is well established that an alleged violation of certain constitutional rights, even for minimal periods of time, constitutes irreparable injury.  *See Averhart v. Annucci*, 2021 WL 2383556, at *9 (S.D.N.Y. June 10, 2021).  The Court therefore finds that Petitioner's loss of liberty in the absence of preliminary injunctive relief would constitute irreparable harm.

    c.  **Balance of Equities / Public Interest**

The remaining preliminary injunction factors—the balance of equities and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Where, as here, a petitioner alleges constitutional violations, the balance of hardships "tips decidedly in the [petitioner's] favor." *Torres-Jurado*, 2023 WL 7130898, at *5.  Similarly, it is well-settled that "there is generally no public interest in the perpetuation of unlawful agency action." *Rhode Island v. Trump*, ⸺ F.4th ⸺, ⸺, 2025 WL 2621593, at *10 (1st Cir. 2025).  Nevertheless, under § 1226(a), a noncitizen seeking release on bond must demonstrate to the

satisfaction of the relevant officer that release would not pose a danger to property or persons and that the petitioner is likely to appear for any future proceedings. *See Romero v. Francis*, 2025 WL 3110459, at *3 (S.D.N.Y. Nov. 6, 2025) (citing *Jennings*, 583 U.S. at 306).

This is where Petitioner's argument begins to falter. Although not addressed in Petitioner's opening papers, he has been arrested multiple times over the past decade. For instance, Petitioner has been convicted of a misdemeanor, has been pulled over on multiple occasions for driving under the influence, has been arrested for child endangerment, has fled from a police officer, and, most recently, was charged with third-degree assault. (Pet'r Mot. Ex. C at 15.) The Court acknowledges that it is presented with a limited record, and this decision does not hold that Petitioner is considered dangerous. However, based on the current record, the Court cannot justify Petitioner's immediate release for purposes of a temporary restraining order or preliminary injunction. As discussed in more detail below, the Court finds that the appropriate remedy is an individualized bond hearing pursuant to § 1226(a).[5]

## II.  Detention Under 8 U.S.C. § 1226(c)

In the event that Respondents' argument under § 1225(b)(2) fails, they alternatively assert that Petitioner is lawfully detained pursuant to the Laken Riley Act, codified at 8 U.S.C. § 1226(c)(1)(e). (Resp'ts Opp. at 15–17.)

---

[5] The Court acknowledges that district courts have released petitioners after finding that they were wrongfully detained pursuant to § 1225(b)(2). What distinguishes those cases from the Court's finding here is that the petitioners in those cases did not have prior arrests or convictions. *See, e.g.*, *Perez Agustin v. Joyce*, 2025 WL 3564494, at *1 (S.D.N.Y. Dec. 12, 2025) (petitioner had "no criminal record"); *Liu v. Almodovar*, 2025 WL 3458633, at *1 (S.D.N.Y. Dec. 2, 2025) (same); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 481 (S.D.N.Y. 2025) (same); *Villegas ex rel. Guzman Andujar v. Francis*, 2025 WL 3215597, at *7 (S.D.N.Y. Nov. 18, 2025) (same); *Rueda Torres v. Francis*, 2025 WL 3168759, at *1 (S.D.N.Y. Nov. 13, 2025) (same); *Goorakani v. Lyons*, 2025 WL 3632896, at *1 (S.D.N.Y. Dec. 15, 2025) (same); *Rocano Buestan v. McShane*, 2025 WL 3496361, at *5 (S.D.N.Y. Dec. 5, 2025) (same); *Yao v. Almodovar*, 2025 WL 3653433, at *1 (S.D.N.Y. Dec. 17, 2025) (same); *Artiga v. Genalo*, 2025 WL 2829434, at *2 (E.D.N.Y. Oct. 5, 2025) (same); *Ye v. Maldonado*, 2025 WL 3521298, at *1 (E.D.N.Y. Dec. 8, 2025) (same).

The Laken Riley Act—enacted earlier this year—expands mandatory detention under § 1226(c) if a noncitizen is deemed "inadmissible" under certain statutory provisions or is charged with, or admits to committing, certain crimes. *See* 8 U.S.C. §§ 1226(c)(1)(E)(i), 1226(c)(1)(E)(ii); 8 U.S.C. §§ 1182(a)(6)(A), 1182(a)(6)(C), 1182(a)(7). As relevant here, the Act mandates detention for noncitizens who are charged with, arrested for, convicted of, or admit to committing enumerated offenses. 8 U.S.C. § 1226(c)(1)(E). For instance, mandatory detention applies to a noncitizen arrested for burglary, theft, larceny, shoplifting, assault of a law enforcement officer, or any crime resulting in death or serious bodily injury. *Id*. § 1226(c)(1)(E)(ii). While the government may release noncitizens detained under § 1226(a), detention under § 1226(c) is mandatory, subject only to narrow exceptions. *See Jennings*, 583 U.S. at 288–89 (citing 8 U.S.C. § 1226). In *Jennings*, the Supreme Court held that § 1226(c) does not permit the government to provide a bond hearing to noncitizens detained under that provision. *Id.* at 303–04. The Supreme Court expressly declined, however, to decide whether the Constitution independently requires such a hearing. *Id.* at 312.

The Second Circuit has since answered that constitutional question, holding that due process prohibits prolonged detention under either § 1226(a) or § 1226(c) without adequate procedural safeguards. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (discussing § 1226(a)); *Black v. Decker*, 103 F.4th 133, 138 (2d Cir. 2024) (discussing § 1226(c)). In doing so, the Second Circuit has applied the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), as "the proper framework for determining when and what additional procedural protections are due." *Black*, 103 F.4th at 138; *see also Savane v. Francis*, 2025 WL 2774452, at *9 (S.D.N.Y. Sept. 28, 2025) (same). Those factors are:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the

10

probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Black*, 103 F.4th at 151 (quoting *Mathews*, 424 U.S. at 335). The Court therefore turns to an examination of the *Mathews* factors.

### a. The Private Interest Affected

Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690. Here, Petitioner "does not contend that greater judicial-type procedures must be imposed upon the administrative actions of ICE than those already required by law; [rather, he] argues that the agency must comply with the procedures already in place, and its failure to do so amounts to a complete and arbitrary denial of due process." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492 (S.D.N.Y. 2025) (citing *Chipantiza-Sisalema v. Francis*, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025)).

In similar circumstances, district courts have recognized that a noncitizen's "private interest affected" in avoiding detention is a "compelling one." *See Perez Flores v. Bondi*, 2025 WL 1921748, at *6 (W.D.N.Y. July 14, 2025); *see also Lopez Benitez*, 795 F. Supp. 3d at 495. And while "[t]he private interest here is not liberty in the abstract, but liberty in the United States," Petitioner has "lived in this country for more than two decades," such that "his interest in liberty in the United States must be particularly strong." *Perez Flores*, 2025 WL 1921748, at *6. The first *Mathews* factor therefore weighs heavily in favor of Petitioner.

### b. The Risk of Erroneous Deprivation

11

A noncitizen subject to detention is guaranteed procedural safeguards, the most critical of which is an individualized bond hearing, allowing an immigration judge to evaluate the noncitizen's risk of flight and potential danger to the community. *See Black*, 103 F.4th at 152.

The Court does not dispute that Petitioner has a criminal record. (*See* Pet'r Mot. Ex. C at 15.) Nevertheless, Petitioner has, to date, been detained without a bond hearing solely due to a purported lack of jurisdiction. (*Id.* Ex. B.) Petitioner has had no opportunity to challenge the basis for his detention or to argue that he poses no danger to the community and no risk of flight while his *habeas* petition proceeds. (*Id.*) Nor has Petitioner been afforded the opportunity to appear before a neutral decisionmaker, contest the evidence against him, or testify on his own behalf. (*Id.*) Petitioner argues that his "detention was illegal from the start because of the lack of any due process," and Respondents "do not argue that Petitioner was afforded any sort of process before [his] detention." *Tumba v. Francis*, 2025 WL 3079014, at *9 (S.D.N.Y. Nov. 4, 2025); *see also Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Respondents' ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights."). The second *Mathews* factor similarly weighs heavily in favor of Petitioner.

c. **The Government's Interest**

Finally, this Court acknowledges that Respondents' interest in detaining Petitioner might be strong in light of his criminal record. (Resp'ts Opp. at 16.) Respondents also point out that Petitioner is neither admitted nor paroled. (*Id.*) In mandating the detention of noncitizens who have committed certain crimes, § 1226(c) reflects Congress' purpose of reducing the risk of flight and protecting the community. *See Demore v. Kim*, 538 U.S. 510, 518–19 (2003); *see also*

*Jennings*, 583 U.S. at 303–04. It is also well established that the government has a legitimate and compelling interest in both of these aims. *Black*, 103 F.4th at 153.

The Court nonetheless does not find that those interests outweigh Petitioner's liberty interest. As explained above, Petitioner has had no opportunity to challenge the statutory assumption that he poses a risk of flight or a danger to the community while his case proceeds. (Pet'r Mot. Ex. B.) Moreover, Petitioner's request for a bond hearing was denied solely for lack of jurisdiction pursuant to § 1225(b)(2). (*Id.*) And although Respondents now assert that Petitioner's detention is valid under § 1226(c), Respondents conceded during the show-cause hearing that DHS argued only that detention was authorized under § 1225(b)(2). To be sure, the immigration judge's order did not reference § 1226(c) or otherwise address whether mandatory detention applied pursuant to that provision. (Pet'r Mot. Ex. B.)

Absent an individualized bond hearing, it is therefore unclear whether Petitioner's continued detention meaningfully advances Respondents' general interests in protecting the community. *See Perez Flores*, 2025 WL 1921748, at *7. Nor have Respondents identified any particularized or heightened interest that would justify continued detention without such a hearing. By contrast, requiring an individualized bond hearing would impose minimal additional administrative or fiscal burdens, as such hearings are a routine feature of immigration proceedings. *See Black*, 103 F.4th, 153–54. The third *Mathews* factor likewise weighs in Petitioner's favor, and accordingly, this Court finds that Petitioner has been denied due process without at least being afforded a bond hearing.

## CONCLUSION

Whether Petitioner's detention is analyzed under §§ 1226(a) or (c), the conclusion is the same: Petitioner's prolonged detention without a bond hearing is unreasonable and a violation of

due process. However, the Court declines—at least at this time—to grant Petitioner's request for immediate release. Consistent with the Second Circuit's reasoning, the Court instead finds that the appropriate remedy is an individualized bond hearing at which the government bears the burden of justifying Petitioner's continued detention. *See Black*, 103 F.4th at 155–59.

As such, § 1226(a) entitles Petitioner to an individualized bond hearing before an immigration judge where the government must show, by clear and convincing evidence, that his continued detention is necessary. *Id*. at 155. At the hearing, the immigration judge must consider whether alternatives to detention would adequately serve the government's interest in ensuring Petitioner's appearance and the safety of the community.[6] *Id*. If a bond would serve that interest, the immigration judge must consider Petitioner's ability to pay in setting the bond. *Id*. at 158.

Respondents are therefore ordered to conduct such a bond hearing by **January 6, 2026**. In the event Respondents fail to conduct a timely bond hearing, they are directed to release Petitioner. The Clerk of Court is kindly directed to terminate the motion at ECF No. 3.

SO ORDERED.

Dated: December 26, 2025
White Plains, NY

_____
Nelson S. Román, U.S.D.J.

---

[6] "[N]umerous courts in this district have found that failing to consider alternatives to detention when assessing dangerousness violates an individual's due process rights." *Marroquin v. Genalo*, 2025 WL 3241161, at *4 (S.D.N.Y. Nov. 20, 2025); *see also Fernandez Aguirre v. Barr*, 2019 WL 4511933, at *5 (S.D.N.Y. Sept. 18, 2019) (finding the immigration judge who did not consider "whether non-incarceratory measures, such as home detention, electronic monitoring, and so forth, could mitigate any danger that Petitioner posed to the safety of the community" had "failed to comply with the requirements of due process."); *Hernandez-Aviles v. Decker*, 2020 WL 5836519, at *2 (S.D.N.Y. Oct. 1, 2020) ("In this case, procedural due process requires an examination of whether detention is necessary to safeguard the community, given available alternatives and the manner in which [petitioner] presents a danger.").